**ROBERTSON TANK LINES, INC.,**
Petitioner,

v.

Johnnie VAN CLEAVE et al., Respondents.

No. B–2238.

Supreme Court of Texas.

June 9, 1971.

Rehearing Denied July 14, 1971.

Fulbright, Crooker, Freeman, Bates & Jaworski, Sam W. Cruse and Royce R. Till, Houston, for petitioner.

Jamail & Gano, Joseph D. Jamail and John Gano, Houston, Warren Burnett, Odessa, for respondents.

GREENHILL, Justice.

This is a suit by Johnnie Van Cleave, individually and as next friend of her four children, to recover damages suffered when her husband and their father, Acie Van Cleave, was killed by crashing into the rear of a tank truck owned by Robertson Tank Lines which was parked on the edge of a road near the northern city limits of Odessa. The truck had been parked by Alfred Dean Donaghey who was employed by Robertson as its driver.

The suit was instituted against both the driver of the truck, Donaghey, and his employer, Robertson. The case was tried against both defendants in one trial, but there have been separate appeals.

The jury found that the driver was not negligent in parking the truck where he did; but it did find that he failed to turn on his lights, and that such failure was negligence and a proximate cause. Judgment was entered on the jury's verdict against the driver, Donaghey, for $300,000. The judgment against Donaghey was affirmed for the full amount. Donaghey v. Van Cleave, 456 S.W.2d 524 (Tex.Civ.App. 1970), and this court refused the writ of error with the notation "no reversible error." That judgment is now final, and this appeal involves only the appeal as to Robertson.

The jury refused to find that Robertson entrusted its truck to a reckless and incompetent driver; but it found that the driver was acting within the scope of his employment for Robertson when he parked the truck (issue 3), and when he returned to the truck to start its motor for the purpose of building its air pressure and warming its engine (issue 8). The trial court, on motion of Robertson, disregarded the answers to issues 3 and 8, and entered judgment for Robertson notwithstanding the verdict.

In its first opinion as to Robertson, the court of civil appeals unanimously affirmed the judgment of the trial court. 454 S.W.2d 785 (1970). On motion for rehearing, that court changed its mind and reversed the judgment of the trial court as to Robertson; and, in effect, it rendered judgment for the plaintiffs. 454 S.W.2d 785 at 792 et seq. Its second opinion and judgment rest upon a presumption to be discussed below.

We are of the opinion that the court of civil appeals was correct in its first opinion and was in error in its second opinion and judgment. Accordingly we reverse that judgment and affirm the judgment of the trial court.

As will be developed, there are two problems. The first is whether there is direct evidence that the driver was acting for his employer and within the scope of his authority for Robertson. The court of civil appeals held that there was none, and we agree. The second problem is whether there exists such a presumption that the driver was acting within the scope of his employment as would raise the issue of scope of employment and support the answers to issues 3 and 8. Those issues were that the driver was acting for Robertson when he parked the truck and when he returned to it to start the motor to warm the engine and build air pressure. As will be discussed, a presumption did arise as to scope of employment upon the proof that the driver was Robertson's employee and was in charge of Robertson's truck. The court of civil appeals held that although the presumption that Donaghey was acting in the scope of his employment arising from proof of ownership of the truck and employment of Donaghey was rebutted by evidence, the basic facts giving rise to the presumption (ownership of the truck and its operation by an employee) were some evidence to support submission of the issues on scope of employment and the affirmative jury findings thereto. 454 S.W.2d 785. The intermediate court relied heavily upon the case of Southland Life Ins. Co. v.

Greenwade, 138 Tex. 450, 159 S.W.2d 854 (1942), for its decision. As discussed below, we do not regard *Greenwade* as applicable to this case.

We hold that the basic facts of ownership of the truck and employment of Donaghey as driver, standing alone and rebutted by positive evidence, do not constitute probative evidence that Donaghey was acting within the scope of his employment at the time of the accident.

The testimony of the driver, Donaghey, relating to his actions preceding the time of the accident is reported in great detail in the opinion of the court of civil appeals on this appeal and also in the Donaghey v. Van Cleave, supra. We need, therefore, only to relate the basic facts.

Donaghey drove from Corpus Christi to Odessa by a route of his own choosing to deliver a tank load of methanol to Champion Chemical Company located on the eastern edge of Odessa. He reached Odessa about midnight and drove to the northwestern part of town to spend the night at his father's home. He returned across town to Champion Chemical the following morning and had unloaded the truck by 9 a. m. Upon phoning Robertson's terminal in Corpus, Donaghey was informed that they did not have another load to haul. He was instructed to return the truck to Corpus. He was not instructed to travel by any particular route; and he was permitted to eat, sleep, and rest at places of his own choosing.

Instead of proceeding to Corpus, Donaghey drove approximately eight miles in the opposite direction to visit his father at the Ram Gun factory where his father worked. He arrived there about 10 a. m. After visiting his father, he called a cousin who came by. They visited various "beer joints, lounges and saloons" in the vicinity of the Ram Gun factory for about 12 hours and drank beer. Donaghey returned from the above establishments to the truck at approximately 11:30 that night to start the engine as above noted. He then left the truck and went with his cousin to a nearby cafe to drink coffee. While Donaghey and his cousin were at the cafe, Acie Van Cleave collided with the rear of the unlighted truck.

Donaghey testified that he started the truck with the intention of driving it to his father's house where he would spend the night and would return to Corpus the following day. Because of the accident, the truck was not moved that night. Donaghey was relieved by Robertson of his duties following the accident, and another driver returned the truck to Corpus. Donaghey, however, was paid the full commission rate for making the trip.

■ It is recognized in Texas that when it is proved that the truck was owned by the defendant and that the driver was in the employment of defendant, a presumption arises that the driver was acting within the scope of his employment when the accident occurred. Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057 (1940).

The presumption arises from the fact of ownership of the truck and employment of the driver; and when unrefuted, the presumption prevails that the driver was acting within the scope of his employment when he had control of the truck.

■ It is also the rule that in order to render the master liable for an act of his servant, the act must be committed within the scope of the general authority of the servant in furtherance of the master's business and for the accomplishment of the object for which the servant is employed. Broaddus v. Long, supra; Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282 (1939); Mitchell v. Ellis, 374 S.W.2d 333 (Tex.Civ.App.1964, writ refused). A problem here is whether the above presumption was rebutted, and if it was, what legal consequences ensued.

A leading case in this jurisdiction on the subject of presumptions is Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763 (1940), in which this court

stated that the rule it adopted had been settled by Houston News Co. v. Shavers, 64 S.W.2d 384 (Tex.Civ.App.1933, writ refused). In *Shavers,* it was undisputed that the truck involved belonged to the defendant, Houston News Co., and that the truck driver was an employee of the company. The evidence showed, however, that the driver was on a personal errand when the collision occurred. In view of that fact, the holding was that the evidence of ownership of the truck and the fact that it was operated by an employee of the owner was insufficient to raise the issue of scope of employment. The rule, and the reason for the rule is stated in the opinion:

> "Evidence that the truck with which the injury was committed belonged to the news company and that it was being driven by one regularly in its employment, in the absence of evidence to the contrary, raised a presumption that such servant was engaged in the news company's business at the time of such collision. [citation omitted] This, however, is a mere rule of procedure and the presumption vanishes when positive evidence to the contrary is introduced. The presumption grows out of the fact that not infrequently the evidence necessary to establish the character of the mission in which the servant was engaged is exclusively within the possession of the defendant. The effect of the rule is to 'smoke out' the defendant and to compel him to disclose the true facts within his knowledge. When, however, he discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce *other evidence* or his cause fails. * * *" [Emphasis ours] [64 S.W.2d at 386]

The above cases make it clear that there is no presumption aiding the plaintiff after the presumption is rebutted by positive evidence to the contrary.

This gets us to the most basic question in this case: Will the facts giving rise to the presumption, without any additional affirmative evidence, support submission of the issues after the presumption is rebutted? Or, to state the question in terms of this case, do the facts that Robertson owned the truck and that Donaghey was regularly employed by Robertson, without any other affirmative evidence, form the basis for an inference from which other facts may be fairly inferred to support the jury findings that Donaghey was acting within the scope of his employment, even if the presumption is rebutted? We hold that they do not. Unaided by any presumption or other affirmative evidence, these facts do not constitute probative evidence that Donaghey was acting within the scope of his employment at the time Van Cleave collided with the parked truck, and such proof does not create a reasonable inference which will support such a finding. Such proof shows only that Robertson owned the truck and that Donaghey was employed as driver of that truck.

In examining the evidence to determine whether the presumption that Donaghey was acting within the scope of his employment at the time of the accident was rebutted, we are not limited to the evidence favorable to the plaintiff; otherwise this presumption might never be rebutted. In this regard, we shall assume that the driver, a party defendant, was an interested witness as to Robertson. It is not here argued under this point that Robertson has proved as a matter of law that Donaghey was *not* acting within the scope of his employment. Instead it is argued that the *plaintiff* has failed to fulfill its burden of presenting evidence sufficient to raise the issue that Donaghey *was* acting within the scope of his employment. The burden of presenting evidence to raise the issue and support the findings of the jury remains on the plaintiff in this case, and there must be some evidence that Donaghey was acting in behalf of Robertson in order to support the jury's findings.

Mitchell v. Ellis, 374 S.W.2d 333 (Tex. Civ.App.1964, writ refused); Hudiburgh v. Palvic, 274 S.W.2d 94 (Tex.Civ.App. 1955, writ refused n. r. e.).

In Mitchell v. Ellis, cited just above, an employee of *Mitchell* was driving Mitchell's truck. While on a reasonably direct route for his employer, the employee-driver pulled the truck over on a shoulder to purchase cigarettes for his own use. The above presumption was urged as raising the issue of scope of employment. The holding was that it did not. It having been proved by the driver that he turned aside, even briefly, for a mission of his own, the presumption was rebutted; and the independent facts of employment and ownership of the truck did not raise the issue. We gave the opinion of the court of civil appeals a "straight refusal."

Similarly in *Hudiburgh*, cited above, it was proved by the driver, who was also a defendant in the case, that he had used his employer's vehicle to go on a personal errand to purchase flashlight batteries. *Held*, as in Mitchell v. Ellis and in *Shavers*, that the presumption had been rebutted; and the facts on which the presumption had been based were not sufficient to raise the issue of scope of employment.

■ Robertson's burden here is merely to rebut the presumption, and after that is done the plaintiff must introduce other evidence on the issues. To rebut a legal presumption, the defendant is not required to meet the highest standard as set out in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1943), and in Anchor Casualty Co. v. Bowers, 393 S.W.2d 168 (Tex.1965). The testimony of Donaghey, to effectively rebut the presumption, is not required to prove he was outside the scope of employment *as a matter of law* when the plaintiff fails to offer any other evidence to support the issue. The evidence to rebut a presumption has a different standard, and the court of civil appeals was correct in concluding that the

evidence here is adequate to rebut the presumption.

The court of civil appeals felt bound by Southland Life Ins. Co. v. Greenwade, supra, in holding that the basic facts from which the presumption arose were some evidence upon which issues regarding the scope of employment could go to the jury. We do not regard *Greenwade* as controlling in this case. In *Greenwade* the facts that a letter was properly addressed and mailed not only created a presumption, but such facts, even without a presumption, were the basis for a reasonable inference that the letter was received in the ordinary course of events. The inference that the letter was received logically follows the fact that the letter was mailed; and although some evidence is introduced to the effect that the letter was not received, the facts remained that the letter was properly addressed and mailed. The jury may, based upon these facts, logically conclude that it was received notwithstanding a denial by the addressee. See also Sudduth v. Commonwealth County Mutual Ins. Co., 454 S.W.2d 196 (Tex.1970).

A distinguishing factor is that there is a logical inference as to delivery of a letter duly addressed and mailed even if receipt of the letter is denied. The basic fact of proper posting remains to support the inference, or logical conclusion, of delivery in the ordinary course of events. On the other hand, ownership of the truck and employment of the driver do not, by themselves, when rebutted by evidence, create the inference that the driver was meeting the legal requirements of acting (1) within the general authority given him, (2) in furtherance of the master's business, and (3) for the accomplishment of the object for which he is employed. Mitchell v. Ellis, supra.

■ Although the facts of ownership of the truck and the employment of the driver remain in the case after the presumption is rebutted, those facts standing alone have no probative value on the actions or legal

relationship of the driver at the time of accident; they do not support an inference, or the conclusion, that he was acting within the scope of his employment. Silva v. Traver, 63 Ariz. 364, 162 P.2d 615, 619 (1945); Annotation, 5 A.L.R.3d 19, et seq. We perceive no conflict with *Greenwade* or Sudduth v. Commonwealth County Ins. Co.

Respondents urge that there is other evidence that Donaghey was acting in the course and scope of his employment when he parked the truck and when he returned to prepare to move the truck from its parked position. It is pointed out that Donaghey testified that he was on the job for Robertson when he parked the truck and also when he started the truck to build air pressure with the goal of getting the truck back to Corpus as instructed. On direct examination by plaintiff's attorney Donaghey was asked, "You were in fact about their business when you went out there to fire that truck up to move it off the highway, were you not?" He answered "yes."

On cross examination Donaghey testified that if he had followed the instructions he received from Robertson's dispatcher he would have returned directly to Corpus by way of Midland. He testified that when he went to visit his father, it was purely a social visit, and that he had nothing to do for Robertson. He had not intended to rest before returning to Corpus, and knew he was violating his instructions. Donaghey admitted that when he parked the truck in front of the Ram Gun plant that he was on his own, doing things for his own interest, and nothing for Robertson Tank Lines. On re-cross he testified that he went there on a personal mission of his own after being instructed to return to Corpus Christi.

We cannot construe Donaghey's testimony as being favorable to the plaintiff in

the light of Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282 (1939). There the employee, driving the defendant's truck, diverted from his route to go home to supper. The wreck happened while the employee-driver was returning to his route. The argument was that when the employee started back to his work for his employer, he was once more within the scope of his employment. The holding was that as a matter of law, the employee was not within the scope of his employment when the accident occurred. As applicable here, this court said,

> "The test of liability is whether he was engaged in his master's business and not whether he purposed to resume it. It is equally true that Henderson owed the duty to his master of returning the car and resuming his employment and, while returning to the zone of his employment, he was discharging that duty, but that fact does not fix liability against the master * * *."

To the same effect is Mitchell v. Ellis, cited above in which we "refused" writ of error, and other opinions of the courts of civil appeals cited in the note below which are apposite factually.[1]

This court has approved the holding that testimony of an employee (driver) that he was acting within the course of his employment at the time of an accident is not admissible. Lynch Oil Co. v. Shepard, 242 S.W.2d 217 (Tex.Civ.App.1951, writ refused). See 2 McCormick and Ray, Texas Law of Evidence 267, § 1426. If such testimony is admitted, with or without objection, it has been held to be incompetent and without probative force. It will not support a verdict or a finding of fact by a court. Southern Surety Co. v. Nalle & Co., 242 S.W. 197 (Tex.Com.App.1922); Lewis v. J. P. Word Transfer Co., 119 S.W.2d 106 (Tex.Civ.App.1938, writ re-

---

1. Morgan v. Luna, 114 S.W.2d 279 (Tex. Civ.App.1938, no writ); Bishop v. Farm and Home Savings and Loan Ass'n., 75 S.W.2d 285 (Tex.Civ.App.1934, no writ);

Liberty Mutual Ins. Co. v. Preston, 399 S.W.2d 367 (Tex.Civ.App.1966, writ ref. n. r. e.).

fused). The statements by Donaghey that he was "on the job for Robertson" when he parked the truck and that he was "about their business" when he returned to start the motor of the truck are legal conclusions of the witness. They are without probative value and cannot raise a fact issue or support a finding of fact. Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97 (1939); Henry v. Phillips, 105 Tex. 459, 151 S.W. 533 (1912); Southern Surety Co. v. Nalle & Co., supra.

As previously stated, we disagree with the intermediate court on its holding that the facts of ownership of the truck and employment of Donaghey, once the presumption is destroyed, constitute some evidence that the driver was acting in the furtherance of his master's business at the time he parked the truck or at the time he returned to the truck and started it for the purpose of building air pressure.

Accordingly, we reverse the court of civil appeals and affirm the judgment of the trial court.